Morning, please. Case number 21-2441 from the Western District of Missouri, Derrick Christopherson v. Robert Bushner. May it please the court. Mr. Stubblefield. I'm Corey Stubblefield. I represent Derrick and Jennifer Christopherson in this matter arising out of a catastrophic flood that occurred on their property in Ozark County, Missouri, in 2017, about 40 days after they purchased it. We filed our original lawsuit against FEMA. The defendants that are at issue here, who are generally referred to as the star entities, who are FEMA subcontractors, FEMA contractors, and various other individuals and entities, the trial court in this matter dismissed the claims against FEMA. We were instructed to go to the Federal Court of Claims against FEMA. The court also dismissed the claims against the star entities based on the doctrine of obstacle preemption. And that's the subject of our appeal. In this case, we're asking the court to reverse the dismissal based on obstacle preemption. The trial court essentially focused on a Fourth Circuit case called Columbia Venture. This case deals with claims against FEMA contractors. And unlike what is being suggested by the star entities, of course, it is not actual controlling precedent. It's it deserves great weight, but this court does not have to follow the Columbia Venture case. And I think everyone will agree that there's certainly not any case law on point directly in the Eighth Circuit that would be of controlling nature in this case. So our position is the Columbia Venture case. First of all, circumstances have changed. The facts of that case are significantly different from this case. And we submit to the court that it should not be followed. In the Columbia Venture case, the plaintiff filed an administrative review request for a FEMA flooding determination. It was upheld, undeterred. They go to federal court, file, and then the Fourth Circuit deals with the issue on appeal of this obstacle preemption. The claims were based on allegations in the Columbia Venture case that the contractors had provided a hydraulic model that was flawed and inaccurate. And the Fourth Circuit started the process of the analysis by looking at the National Flood Insurance Act when applying obstacle preemption. The NFIA was created by Congress to limit the damage caused by flood disasters through prevention and protective measures, spread the risk of flood damage among private insurers and the federal government, and make flood insurance available to those that need it. Our position here is that Columbia Venture is in opposite to this case. First and foremost, the statute that provided the administrative relief in that case, 42 U.S.C. 4104, this administrative procedure, Congress took that away in 2012. This was a 2010 case, and by 2012, that was gone. And in this circumstance, we have a piece of property which we purchased in 2017. We are complaining about actions and inactions that occurred through FEMA and FEMA's subcontractors in 2010. It's, of course, our position that there's no way for the Christoffersons, number one, to have guessed seven years ahead of time that they're going to have this need to challenge actions that occurred in 2010. Likewise, it doesn't make any sense to suggest that they've got the right to send demand letters or do anything like that now. They just do not have the opportunity to follow that administrative procedure after 2012. And so the Columbia Venture case we would submit really should be limited to its specific facts given the law at that time. Now, this is done on a motion to dismiss, right? So all the facts we've got is just your complaint, right? That's correct. Okay. Now, I'm confused about a very basic fact, and I don't know where Ozark County is. I'm confused about a very basic fact. That is, is there even flood insurance available in Ozark County? There is not flood insurance available. Okay. Well, you say in paragraph 58 of your complaint, even if you'd wanted flood insurance, they would have been able to do so. But in 100, you say, in the alternative, plaintiff would have been required to purchase flood insurance, parentheses, and certainly would have done so. So how can you, can you get, do private insurers, can you get flood insurers, do private insurers down there? Theoretically, yes. The issue here, though, is that my clients had purchased, had purchased this property with a federally backed mortgage. And if there, if you have a federally backed mortgage, you have to get flood insurance if you are in a specific flood designation. And you are correct. The question was, is flood insurance available through FEMA in Ozark County at this location? And the answer is no. And so the problem arises with, with the Christoffersons in this case, because they have a federally backed mortgage. If they had known that they had been in a flood zone that would have required the flood insurance through FEMA due to the federally backed mortgage, they could not have gotten it. The loan would have failed, the sale would have failed, and we would not be here. And so. Okay, so what do you mean in paragraph 100? Clients would have been required to do flood insurance and certainly would have done so. What does your and certainly would have done so mean? My clients would have been happy to buy flood insurance if it was available. But because Ozark County is a non-participating community, if there was a situation where they had to buy flood insurance, you can't just buy flood insurance just because you want it. You need to be in a situation where you've got to be able to get it. And and so if they'd had the opportunity to buy flood insurance, my actually my client's an insurance agent. He values the the ability to get insurance if he needs it. They would have been happy to buy insurance if they would have needed. It just wasn't available. And in this particular circumstance, it turns out, at least at the time they purchased the property based on the representations of star, the star entities. It wasn't in a flood zone that they needed insurance for. So it turned out, at least on the face of it, to not be a big deal until after the fact. They realize, well, wait a minute. We've got we've got a situation now where we should have been in a situation where we we needed to buy the flood insurance, but we couldn't. And let me ask you a question about your reply brief. In your reply brief, you have a theme of stars renegade. I'll put it in plain country language. OK, have a comma. Now, if you read your complaint almost all the time, you have FEMA slash star or FEMA and or star or FEMA comma star and somebody else. I don't think in your complaints you ever distinguish FEMA from star in one bit. Can you point your complaint where you do that? Honestly, no. I think we pleaded in the complaint that FEMA and star had worked together. I mean, star as a your your reply brief has a little different flavor to it counts. Sure. And well, and for candidly, what what we're thinking here is that with FEMA, the court directed us to file a claim in the federal court of claims based on sovereign immunity. So, yes, we didn't even we didn't even appeal that issue. The issue solely and only that we've appealed is against the contractors, the star entities. And I'll just be candid with you. We did not get far, very far into the case. This is a motion to dismiss. And and and my my hope would have been that through discovering depositions, we would have been able to flesh out more. You know, was this actually FEMA? Was this? We don't have that in this case because we're here on the complaint. OK, absolutely. Proceed with your argument. Moreover, with the Columbia Venture case, we believe it's it's should not be followed that the statute changed. This is a particular kind of a weird situation where as to the star entities, we do not have any any recourse at this point. I mean, with FEMA, yeah, fine. Go to the the federal court of claims. But with these star entities, we have no way to seek recourse from them at this point. Based on the trial court's ruling, there's no way to hold them accountable. And and based on, of course, with obstacle preemption, you have a balancing of federal interests and state interests and so forth. We believe that that, frankly, one of one of the things that comes to my mind that is of great importance we've already talked about, and that is in Columbia Venture. They're all about the National Flood Insurance Act. And we submit to the court that in this case, just as in the case that we cite for for our support of our position, the Williams case, we do not believe the National Flood Insurance Act is really even implicated here. And and because we could not have purchased flood insurance, even if that is the authority for FEMA to hire a star, right? What's that? That is where they get the authority to hire star, right? Yes. Yes. They're allowed to hire subcontractors to to assist them with with their work very, very quickly. And I believe I only have about four and a half minutes left, so I will I will bank the rest of my time. All right. Thank you, Mr. Snowfield, Mr. Ginsburg. Thank you, Your Honor. Excuse me. My name is Ross Ginsburg, and I represent the Strategic Alliance for Risk Reduction. The star defendant in this case, which is a single purpose entity formed for the specific purpose of supplying flood insurance mapping services to to FEMA. And just on Mr. Stubblefield's last point, I would I would direct the court to the amended complaint to paragraph twenty three and ninety four, where jurisdiction against star is based on the fact that we're supplying flood insurance, supplying these services for FEMA under the NFP. So the suggestion that the NFP is not implicated is is repeatedly refuted by the council. Let me let me explore that, though, because that that's what I was driving at before. Yeah. Why do the aims of the National Flood Insurance Program to spread risk and do better management and, you know, the things it's supposed to do? Why do those play in this case where this county is a county that doesn't even have flood insurance? Well, we still do mapping. So the way the program works, Your Honor, is that the star entity in this region performs flood mapping services to identify flood prone areas. The reason why this area is not does not have flood insurance available to them is because they opt out of it. But the first step of it, of course, is to map the flood plain and that the flood prone areas, which is what is done by FEMA's contractor star here. Then if the community opts into it, they have to enact ordinances that comply with the statute. And then and then, of course, that requires people to buy flood insurance. But even in areas where there is an opt out, FEMA's agent, FEMA's contractor star is performing flood mapping services under the statute for. But it doesn't have anything to do with the insurance and it doesn't have anything to do with risk and it doesn't have to do anything with with national policy. Well, it has to do with all of those things. So you're right. No, it can't because insurance not available. Well, no, the point is that insurance isn't available because a decision that the community has made. I get that. But I'm talking about here's what I'm trying to focus you on. The obstacle preemption to me means that what would happen here, a lawsuit would obstruct the program of getting insurance and keeping down flood and doing all this stuff. And this is in an area that doesn't have insurance. Well, I think like we can't rely on obstacle preemption here. Yeah, well, I think the the disconnect here is that the services that are being performed by star in this case arise under the national flood insurance policy. Now, taking what is the obstacle to the federal interest? So here's the here. There are several. There is what the district court found, which is the claims like this are allowed to proceed. The cost of defense and the potential exposure will be brought back to FEMA by increased contract fees. That's that's one obstacle. Other obstacles, if you'll permit me, is if you think about how cases like this would play out in every time star makes a flood mapping decision. There are going to be individuals who are just inside the flood zone and people who are just outside the flood zone. And each of them have the capability of being aggrieved by that decision. Folks just inside the flood zone often don't want to be because it's stigmatizing to their property and because they have to pay for flood insurance that they otherwise don't want. Folks just outside of the flood zone may feel like they're OK until the flood comes and then they wish they weren't inside the flood zone. So if you can challenge if you can challenge through state court laws, the notion that the flood determination made by star in this case was negligent or otherwise wrongful under state law. Then you're placing in the hands of the jury the ability to decide whether that floodplain determination was made correctly. So wasn't the allegation here one step further, which is it was a misrepresentation. So it's a little bit different than just the mapping itself. As I understand the plaintiff's claim is that there was some type of fraudulent misrepresentation about the change in the flood mapping, not the mapping itself, but sort of hiding information with ill intent. Is that is that different in terms of for purposes of obstacle preemption? I would say that I don't think that the complaint contains those facts. I know the reply brief does, and certainly not to the pleading standards that are applicable. But I could. Well, I appreciate your point. But I think at least in the complaint, it says misrepresentation. It sure does. And the intent to harm. And it says fraudulent misrepresentation, too. I don't think it is pled properly under the Iqbal Ashcroft and 9B standards. But I'm not. I don't want to press that too hard because I don't think that it makes a difference when obstacle preemption applies, as in your pet quarters case from the 8th Circuit claims for misrepresentation and fraud. And and and those types of claims are also not properly brought because of the obstacle. So what if what if what if FEMA had told you do something you did the opposite? And, you know, you know, the defense contractor cases where the defense contractor does what the Pentagon told him not to do. You can sue the defense contractor. Those cases are legion. Those cases typically involve a product such as a helicopter, like in the boil. You've got a product. You've got a flood zone map. Now, what we what we perform our professional services. And so counsel counsel, this is this is this is arguing metaphysics or something because you have a product, too. I don't think you could dodge it that easily. Surely if you. Now, it's not this case. I get it. I know they may think it is. But but I don't know. They've played that because of the way they played you at the same time. But surely if FEMA don't do something, you did the opposite. It hurt somebody. They can't sue you. Well, you know, I would I would I would think not actually. But those are not the facts in this case. There is no allegation that FEMA told us to do something that we did the opposite of. But if I can get back to the chief judge's question about what the obstacles are, you know, if you follow it forward and we get to a jury verdict in a case where somebody who's flooded contends that they wouldn't have purchased their house. Had you properly map this and found me to be in the floodplain, then you've got a situation where the government contractor has a finding of negligence against them for their flood mapping services, which opens up. Them to other litigation from other similarly situated people, because now they've got this negligence finding that will probably be collaterally stopped from denying. The alternative to those cases is for now the contractor to try to conform the flood elevation to the jury finding. And once you do that, you're expanding, you're expanding the group of people who are now in the floodplain because you've raised it up a foot or two feet or whatever. And those people are now eligible for the government benefit. So when you expose the contractor in a flood elevation mapping case to the whim of a jury who may likely be confused by competing experts and who may be sympathetic to a plaintiff. You are putting into the hands of the jury what the proper flood elevation of the proper flood mapping should be. And you're taking that away from FEMA and the government contractor in a setting in which you're assuming to begin with that there is a reliance interest in homeowners who are just outside of the floodplain that they should be. You show such contempt for the jury system. I'll remind you that the sixth and seventh and various amendments do apply. The federal government proceed. There's no question about that. I have no contempt for the jury is what I have. It sounded like it there. It's that. No, I have contempt for the jury. No, I have contempt for my own people, Your Honor. We've we put experts up and we and one says it was wrong and the other says it was right. And they're very technical issues. And the juries have trouble with cases like that. And so you'll be taking out of the hands of the contractor, the flood elevation, putting it into the hands of a jury. And those standards differ from county to county and state to state. And so all of the cases that talk about obstacle preemption and the goal of having uniformity under the statute are manifestly harmed by placing that determination into the hands of the jury. Council, are there federal remedies available for someone harmed by a federal contractor in facts like this? I don't think in facts like this, there would be a federal remedy against star. There are federal remedies against FEMA in the form of the inverse condemnation action that needs to be brought in the federal court of claims. They are not without a remedy, but if a remedy is provided against the flood mapping contractor, you will, you know, the purposes of the N. F. I. P. R. to provide expeditious identification of flood prone areas per the statute. And if you get tied up in litigation, like in this case, which has been pending for almost three years, you delay that process. If you end up having to expand the floodplain because of a jury finding, you end up costing the National Treasury more money because now more people are eligible for the benefit. It's been pending for three years and it's at the pleading stage. What what what's been the cause for the delay? It this is just how it proceeded through the court. But no discovery council, but that right. And the other the other thing I would add now, no discovery. But the other thing I would add, if you look at to your point, Judge Benton, there are places in the complaint where there are distinctions made between FEMA and star in paragraph ninety five. The plaintiff alleges that the DOE defendant made the change at issue and in paragraph one eleven, the plaintiff alleges that DOE is a FEMA employee. So there is that distinction. And I would also add that this case suggests that the FEMA contractor is a guarantor against flood damage and creates a reliance interest in people who are purchasing properties. In this case, seven years after the determination is made in paragraph fifty one of the plaintiff's complaint, they allege that their property sits only two to three inches above the floodplain that they thought existed. So their claim, if taken to its logical conclusion, is that I bought a property that I knew to only be two to three inches above the floodplain. But I was guaranteed by the FEMA contractor. I have a reliance interest against the FEMA contractor that I would never flood. I would never flood because if I knew I was going to flood, I wouldn't have bought this property. And that's the problem with this. It sounds sensationalist because the allegations in this case are it went up thirty four feet and then down thirty four feet. I understand that. But you're going to be deciding something that has broad applicability to anybody who's just two to three inches out of the floodplain. And when they get that flood and they sue that contractor, that is going to create an exposure to the FEMA contractor that I predict most engineering companies will want no part of. And they will not want to provide. This is the old CPA argument. If we're liable for stuff in the securities market, you're going to do if all the CPA firms and the fees just go up. So I don't I don't know that the fees are your better argument. But that's that's not my that's not my argument. That's just Scalia's argument in the Boyle case. And it's the Fourth Circuit's argument in Columbia Venture. And it's the district court's argument. These are real concerns. If you have thousands and thousands of people just outside of a floodplain who are by virtue of an adverse ruling to us in this court now free to sue the FEMA contractor when there's a flood, that will create so much potential exposure that I can't imagine engineering firms wanting to do this work for FEMA anymore. And even if they do, they're going to charge an arm and a leg for it. And that really is the basis of the holding in Columbia Venture and in the federal cases, including the United States Supreme Court. You agree with you're doing Boyle versus United Technologies, right, counsel? I am. I am. Well, good. And you agree with the structure there of analyzing the interests and because that was like the defense cases I was referring to. It is. It is. So you're well aware of that line of cases. That is the helicopter case. It is. And it talks about the specifics. So you don't believe you'd ever fit in because you don't make a product. I heard your argument there. You don't believe you'd ever fit in the fact determinate facts and circumstances. As you know, that's what Boyle's talking about. You look at the interest and you look at how the facts line up. A quick, dirty summary. You don't think you'd ever end up with any liability in any case. I think if the FEMA subcontractor could be exposed to a lawsuit based on the facts presented here or any fraud or misrepresentation claim based on where the flood elevation is set, then the floodgates of litigation would be so wide open. And I would also step back, you know, like the Boyle case is a person that was a single person who was injured in the helicopter. There's a threat. There's a direct connection between the personal injury and that and that product. You know, what we're talking about here is a determination in the nature of a judicial determination. I mean, if this is an arbiter of where the flood elevation ought to be is really what the start star is really the arbiter of that. And kind of like judicial immunity, you don't want those folks to have to suffer the problems of having suits brought against them, like in the seagull versus rapkin case from the southern district of New York, where the survey or mapping flood elevations was found not to be amenable to suit because of the chilling effect it would have on those services and the fact that it would delay the process that the government. So, I think at the end of the day, your honor, I recognize the connection between those factors and boil and the cost to the government, but there are so many other issues at play here that would be obstacles in terms of getting this program delivered that I don't think that those factual issues with matter here. Thank you, Mr. Ginsburg. Mr. Stubblefield, your rebuttal. Yes, very quickly. I want to revisit the obstacles that were that were discussed. Essentially, the concerns that they're raising don't have any support. I mean, the first issue is we're concerned about backdoor liability costs and those types of things. It's kind of ironic that the star entities are making this argument and relying on what the trial court said. Right in the next breath, they say, oh, well, just go sue FEMA and the federal court of claims. If they were concerned about liability costs and limiting litigation and doing those things, they're essentially just telling us, OK, don't come after us. Just go after somebody else somewhere else. Leave us alone. The next issue, these these costs that are going to be passed on based on a floodgate of claims. I mean, I think everybody will can kind of agree in this case that these are very out of the ordinary types of facts. And everybody has done research. We filed briefs. We've essentially found two cases which are at least kind of in the ballpark of on point in the Columbia Venture case. And then the Williams case, which I've cited from the Middle District of Pennsylvania. And so based on based on the pretty limited breadth of case law out there, I'm I'm not terribly concerned about a wide gulf of of new claims being made. And, of course, the elephant in the corner here is this is not a two inch or a five inch modification of the base flood elevation. This is a 34 foot modification of the base flood elevation. And and I would submit that I don't think we've talked to anybody in this case that has ever heard of anything like this in terms of the 34 foot change. And so I would submit that the the impact of this, at least particularly on these facts, is going to be limited. You know, the other concerns about insurance costs and those types of things. We don't have any studies. We don't have any basis cited for for any of that support. I before I go, I do want to quickly highlight this Williams case. I understand that that they are distinguishing it because it is an insurance procurement case. I understand that the reason I have cited that, though, is the facts are much closer to the facts of our case than Columbia Venture in the sense that they relied on a representation from a FEMA subcontractor to their detriment. If they had known that information at the time of the purchase, they would not have purchased it and they would not have suffered the suffer the loss. And moreover, the the analysis set forth by the Williams case makes a lot more sense in the context of our case, particularly in light of the NFIA not being implicated in the Williams case. They said it wasn't implicated because that particular contractor actually gave back the insurance money. It was not a Williams case was not appeal of the Third Circuit, right? Correct. And Williams case is any circuit cited it. I do not believe so. Again, there's there's not a lot, not a lot of case lie out there. And so as a result of that, you know, we would submit to the court that based on the particular facts of this case that we have pleaded and we pleaded misrepresentation and we pleaded that specific wrongdoing on the part of FEMA and the star subcontractors specifically that we should be entitled to be able to prosecute our case. Do our discovery, figure out exactly who with star did what, when they did what and hold them accountable for their particular actions in this case. And I would ask the this court to reverse the ruling of the trial court in dismissing the matter. I don't see any additional questions. Thank you, Mr. Stubblefield. And thank you also, Mr. Ginsburg. Court appreciates counsel's participation in argument before the court this morning and answering our questions. And we will continue to review the materials that are a part of the record and your briefing and render decision in due course. Thank you. Council may be excused.